**RIMON P.C.**
Attorneys for Kenneth P. Silverman, Esq.
  Chapter 7 Trustee
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Ronald J. Friedman
Brian Powers
Courtney M. Roman

**Hearing Date: September 25, 2025**
**Time: 10:00 a.m.**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:

NEUEHOUSE INC.,
fdba CULTUREWORKS INC.
fdba FOTOGRAFISKA NEUEHOUSE INC., *et al.,*

                 Debtors.

Chapter 7
Case No. 25-11937 (MG)
Jointly Administered

-----------------------------------------------------------------x

### NOTICE OF HEARING ON CHAPTER 7 TRUSTEE'S APPLICATION (I) SEEKING AUTHORIZATION PURSUANT TO 11 U.S.C. § 721 TO OPERATE DEBTOR'S BUSINESS ON A LIMITED BASIS AND (II) AUTHORIZING AND APPROVING THE MANAGEMENT AGREEMENT WITH CONVENE HOSPITALITY GROUP PURSUANT TO 11 U.S.C. § 363(b) <u>AND RULE 9006(c) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE</u>

**PLEASE TAKE NOTICE**, that upon the application (the "Application") of Kenneth P. Silverman, Esq., the interim chapter 7 trustee (the "Trustee") of the jointly administered bankruptcy estates of NeueHouse Inc., fdba Cultureworks Inc., fdba Fotografiska Neuehouse Inc., *et al.* (the "Debtors"), will move before the Honorable Martin Glenn, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton U.S. Custom House, One Bowling Green, Courtroom 523, New York, New York 10004, via Zoom for the Government, on **September 25, 2025 at 10:00 a.m.**, or as soon thereafter as counsel can be heard (the "Hearing"), (i) pursuant to Section 721 of Title 11 of the United State Code (the "Bankruptcy Code"), authorizing him to continue the operations of the Debtors' business for the purposes set forth below through and including December 31, 2025 (the "Limited

Basis"), subject to further extensions as may be warranted under the circumstances; (ii) pursuant to Section 363(b) of the Bankruptcy Code and Rule 9006(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing and approving a management agreement (the "Management Agreement"), substantially in the form annexed thereto as **Exhibit B**, by and between the Trustee and CHG MSQ Manager, LLC ("CHG"); and (iii) granting such other and different relief as the Court deems just and proper.

**PLEASE TAKE FURTHER NOTICE**, that prior to the Hearing, any party wishing to appear at the Hearing is required to register their appearance by 4:00 p.m. one (1) business day in advance of the Hearing using the Court's eCourt Appearances platform: https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl.

**PLEASE TAKE FURTHER NOTICE**, that responses or objections, if any, to the relief requested in the Application (i) may be raised at the Hearing, or (ii) prior to the Hearing in writing, filed with the Court electronically in accordance with General Order M-399 by registered users of the Court's electronic case filing system and, by all other parties in interest, mailed to the Clerk of the United States Bankruptcy Court, Alexander Hamilton U.S. Custom House, One Bowling Green, Courtroom 523, New York, New York 10004, with two (2) hard copies delivered directly to the Chambers of the Honorable Martin Glenn, United States Bankruptcy Judge, Alexander Hamilton U.S. Custom House, One Bowling Green, New York, New York 10004; and served upon (a) Rimon P.C., 100 Jericho Quadrangle, Suite 300, Jericho, New York 11753, Attn: Brian Powers, Esq., and (b) the Office of the United States Trustee, Office of the United States Trustee, Alexander Hamilton U.S. Custom House, One Bowling Green, Room 534, Attn: Mark Bruh, Esq., so as to be received no later than **5:00 p.m. on September 24, 2025**.

**PLEASE TAKE FURTHER NOTICE**, that the Hearing may be adjourned without

further notice other than the announcement of such adjournment in open court, or the filing of a

notice of adjournment on the docket.

      **PLEASE TAKE FURTHER NOTICE**, that you need not appear at the Hearing if you do

not object to the relief requested in the Application.

Dated: Jericho, New York
      September 22, 2025

                **RIMON P.C.**
                Proposed Attorneys for
                Kenneth P. Silverman, Esq.,
                Interim Chapter 7 Trustee

          By:      *s/ Brian Powers*
                Brian Powers
                Partner
                100 Jericho Quadrangle, Suite 300
                Jericho, New York 11753
                (516) 479-6300

**RIMON P.C.**
Proposed Counsel to Kenneth P. Silverman, Esq.,
The Interim Chapter 7 Trustee
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Ronald J. Friedman
Brian Powers
Courtney M. Roman

**Hearing Date:**
**Time:** 10:00 a.m.

**Objection Deadline:**
**Time:** 4:00 p.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:

NEUEHOUSE INC.,
fdba CULTUREWORKS INC.
fdba FOTOGRAFISKA NEUEHOUSE INC., *et al.,*

Debtors.
-----------------------------------------------------------------x

Chapter 7
Case No. 25-11937 (MG)
Jointly Administered

**TRUSTEE'S APPLICATION (I) SEEKING AUTHORIZATION PURSUANT
TO 11 U.S.C. § 721 TO OPERATE DEBTOR'S BUSINESS ON A LIMITED BASIS
AND (II) AUTHORIZING AND APPROVING THE MANAGEMENT AGREEMENT
WITH CONVENE HOSPITALITY GROUP PURSUANT TO 11 U.S.C. § 363(b)
AND RULE 9006(c) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

Kenneth P. Silverman, Esq., the interim chapter 7 Trustee (the "Trustee") of NeueHouse

Inc., fdba Cultureworks Inc., fdba Fotografiska Neuehouse Inc., 63 Market Lessee LLC, Bradbury

Lessee LLC, Neuehouse New York HQ LLC, Neuehouse Optimization Inc., NH F&B Inc., 73

Market Lessee LLC, Neuehouse Management, LLC, Neuehouse Hollywood LLC, NH Holdings

Trust, and Neuehouse Madison Square LLC (collectively, the "Debtors"), respectfully submits this

motion (the "Motion"), for the entry of an order (the "Proposed Order"), substantially in the form

annexed hereto as **Exhibit A**: (i) pursuant to Section 721 of Title 11 of the United State Code (the

"Bankruptcy Code"), authorizing him to continue the operations of the Debtors' business for the

purposes set forth below through and including December 31, 2025 (the "Limited Basis"), subject

to further extensions as may be warranted under the circumstances; (ii) pursuant to Section 363(b)

of the Bankruptcy Code and Rule 9006(c) of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), authorizing and approving a management agreement (the "Management

Agreement"), substantially in the form annexed hereto as **Exhibit B**, by and between the Trustee and CHG MSQ Manager, LLC ("CHG"); and (iii) granting such other and different relief as the Court deems just and proper; and respectfully represents as follows:

## JURISDICTION

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2.      Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicate for the relief requested in this Motion is Rule 1015 of the Bankruptcy Rules.

## PRELIMINARY STATEMENT

4.      Prior to the Petition Date, the Debtors operated a chain of members only clubs catering to those working in creative industries. The Debtors' spaces were used for various purposes, including weddings and corporate events, and were often licensed to creatives and/or artists as workshops and galleries. The Debtors' locations also have dedicated studios for podcasts and recording studios for use by its members.

5.      Despite considerable membership and facilities in desirable locations, the Debtors failed to be profitable and fell considerably behind in rent at three of their four locations. Intermittently over the course of several years, including a process which was ongoing until just before their chapter 7 filings, the Debtors marketed their business for sale. As a result of those marketing efforts, the Debtors received considerable interest from third parties, including some of the largest operators of shared workspaces in the world.

6.      Notwithstanding that substantial interest, and a deal appearing to have been close just prior to the Petition Date, the Debtors elected to forego the planned chapter 11 sale process. Instead, the Debtors terminated all of their employees, closed all of their locations, and began filing the chapter 7 cases two days later.

7.      Due to the abrupt nature of the closure of the Debtors' sizeable business and termination of their entire staff, the Trustee has faced difficulty in ascertaining certain pertinent financial information relating to the Debtors and their assets. Since his appointment, the Trustee and his professionals have expended considerable time and effort in aggregating and reconciling the electronic data, executory and related contracts, and financial information contained in the Debtors' books and records.  The Trustee also conducted interviews with the Debtors' key management personnel regarding general operations, financial, and administrative issues with the Debtors' business.

8.      While the Trustee's investigation continues, it has become apparent that the Trustee must manage certain assets of the estates to ensure and preserve the value of the Debtors' assets for a potential sale. Permitting the Trustee to operate the Debtors' business on the Limited Basis will provide the Trustee with the ability to maximize these assets expeditiously and for the benefit of creditors.

9.      Importantly, through the Debtors' pre-filing retained investment banker, the Trustee has engaged with numerous parties regarding the potential management and sale of the Debtors' business, including many parties which were interested prior to the Petition Date and others that reached out subsequently.  The Trustee has also engaged with all of the Debtors' landlords regarding the potential of continuing operations pending a sale, as well as a potential resolution to the various issues concerning the Debtors' locations.  Based upon those discussions, it is apparent that the primary value in the Debtors' business is derived from the Debtors' considerable, loyal membership base which pays license fees to the Debtors on a monthly basis to use the facilities.  Accordingly, in order to preserve the Debtors' remaining value of the Debtors' assets, it is imperative that the Trustee preserve the Debtors' existing membership quickly before those parties find other similar spaces.

10.     To assist in managing the Debtors' business at its Madison Square location (and only that location), the Trustee has agreed to the terms of the Management Agreement, subject to

3

approval of this Court. CHG, the Trustee's proposed manager, is part of a global hospitality platform with the infrastructure and expertise to preserve and enhance the Debtors' value for a potential sale of the Debtors' assets. Importantly, CHG has a unique knowledge of the Debtors' business operations because CHG has spent a considerable amount of time performing due diligence on the Debtors as part of a potential purchase pre-petition.   In fact, the Trustee understands that CHG's affiliate was the leading bidder in the Debtors' prepetition marketing efforts and was close to a deal to move forward with a sale.

11.    As manager of the Debtors' operations, CHG will report directly to the Trustee and be authorized to, among other things, (a) manage, maintain and operate all services provided by the Debtors, including, but not limited to, meetings, events/event programming, membership services, and related services; and (b) hire and manage all personnel. Perhaps most importantly, CHG has agreed to assume all responsibility operational expenses, including for any shortfalls in operations during the term, ensuring that the Debtors' estates cannot be harmed by any losses from operations.  Additionally, an affiliate of CHG and the Trustee have agreed to the terms of the sale of the Debtors' assets to CHG's affiliate, to be documented within ten (10) days of the effective date of the Management Agreement and subject to separate approval by this Court on appropriate notice.

12.    The Management Agreement also resolves (at least temporarily) any issues with the MSQ Landlord (defined below) by providing for a profit sharing arrangement in lieu of use and occupancy payments for the Madison Square Location (defined below).  The MSQ Landlord has consented to the Management Agreement and the structure of payments it would receive as set forth therein.

13.    As described below, the Trustee has determined, in his reasoned business judgment, that the proposed operation of the Debtors' business and the entry into the Management Agreement are the best method for maximizing the value of the Debtors' business as a going concern and preserving value for the benefit of creditors.

4

## BACKGROUND

### The Bankruptcy Case

14.      On September 5, 2025 (the "Petition Date"), September 7, 2025, September 8, 2025, September 9, 2025 and September 10, 2025, each of the various Debtors each filed a voluntary petition for relief in accordance with chapter 7 of the Bankruptcy Code in this Court.

15.      By Notice of Appointment, Kenneth P. Silverman, Esq. was appointed the interim chapter 7 trustee (the "Trustee") of the Debtors' estates.

16.      The initial section 341 First Meeting of Creditors is scheduled to be held on October 7, 2025.

### The Eviction Action

17.      On March 17, 2025, 25 Park LLC (the "MSQ Landlord"), the Debtors' landlord at the Madison Square location at 110 East 25th Street, New York, New York (the "Madison Square Location"), declared the Debtors' lease for the Madison Square Location terminated for non-payment. On that same date, the MSQ Landlord commenced an eviction action in New York State Supreme Court (the "State Court") against NeueHouse, Inc. ("NeueHouse"), which was pending as of the Petition Date.

### The Debtors' Business and Assets

18.      As discussed above, the Debtors operated a chain of members (collectively, the "Members") only clubs catering to those working in creative industries. Upon information and belief, as of the Filing Date, the Debtors had approximately 3,000 Members, each permitted to use the leased spaces as workshops, studios, and galleries. The Debtor also used their leased spaces for various purposes, including weddings, screenings, conferences, and corporate events.

19.      Prior to the filing of these chapter 7 cases, the Debtors were engaged in negotiations with an affiliate of CHG, as well as numerous other parties, regarding the sale of the Debtors' business.

### RELIEF REQUESTED

The Trustee Should be Authorized to Operate the
Debtors' Business Under Bankruptcy Code Section 721

      20.     Bankruptcy Code section 721 provides:

> The court may authorize the trustee to operate the business of the
> debtor for a limited period, if such operation is in the best interest of
> the estate and consistent with the orderly liquidation of the estate.

11 U.S.C. §721.

      21.     Bankruptcy Code § 721 "allows bankruptcy courts to authorize a chapter 7 trustee to operate the debtor's business for a limited period of time if operation of the business is in the best interest of the estate and consistent with an orderly liquidation." *In re Williams*, 354 B.R. 604, 610 (Bankr. N.D.N.Y. 2006). Courts have found "[t]his power includes the ability to obtain unsecured credit and to incur unsecured debt in the ordinary course of business," and to pay the necessary expenses to preserve assets of the estate. *In re Cascade Oil Co., Inc.*, 51 B.R. 877, 880–81 (Bankr. D. Kan. 1985); *see also In re Tarrant*, 349 B.R. 870, 880 (Bankr. N.D. Ala. 2006); *Matter of Quarter Moon Livestock Co., Inc.*, 116 B.R. 775, 782 (Bankr. D. Idaho 1990).

      22.     As discussed above, in order to maximize the value of the assets of the estates, the Trustee needs to be able to continue the Debtors' operations on the Limited Basis. Permitting the Trustee to operate the Debtors' Madison Square Location through CHG would ensure that the Debtors' business can be properly maintained so as to not lose the primary value of the business, its substantial membership. Without the ability to immediately reopen the Madison Square Location, the Trustee expects that huge numbers of the Debtors' members will find alternative spaces for their needs and much of the value of the Debtors' assets will be lost.

      23.     Based on the foregoing, the Trustee submits that the continued operation of the Debtors' business on a Limited Basis is in the best interests of and is consistent with the orderly administration of the Debtors' estates and will preserve the value of the Debtors' assets.

Accordingly, the Trustee respectfully requests that the Court enter an order authorizing him to continue to operate the Debtors' business on the Limited Basis.

The Trustee Should be Authorized to
Enter into the Management Agreement With CHG

24.    Bankruptcy Code §363(b) and Bankruptcy Rule 6004 govern the use of property outside the ordinary course of a Debtor's business.  Section 363 of the Bankruptcy Code provides, in relevant part, that a debtor in possession, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b)(1).  Under the seminal decision rendered by the Second Circuit in *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983), in determining whether to approve a request for the use, sale or lease of property other than in the ordinary course of business, the Court must find a "good business reason" to approve such use.  *Id.* at 1071.  As discussed below, such "good business reason[s]" exist in the present case because the relief sought by this Motion is a component of a larger strategy the Trustee is implementing to pave the way for a value-maximizing sale in this case.  Further, the employment of a management company to direct the operations of all aspects of the Debtors' business can be deemed to be within the ordinary course of business.

25.    Moreover, the Debtors terminated all of their employees shortly before the Petition Date, and the Trustee does not possess the necessary expertise to run the Debtors' business on a day-to-day basis.  To preserve the value of the Debtors' business for a potential sale to CHG's affiliate (or any another purchaser if the Court declines to approve such a sale), the Debtors must be operating and maintaining its membership base.  In order to effectively accomplish that goal, the retention of CHG is necessary.

26.    Finally, and perhaps most importantly, the Management Agreement provides that CHG assumes all of the risk of any operational losses, insulating the estate from diminution during the period from the commencement of operations through closing on a sale.    Additionally, unlike the typical management agreement which would be for an extended period of time with potential penalties for early termination. CHG has agreed to be appointed for a *limited* period of time through closing on the sale of the Debtors' assets.

27.    Accordingly, approval of the Management Agreement is in the best interests of all parties in interest because it will facilitate the sale of the Debtors' assets and infrastructure to ensure compliance with the Trustee's operational protocols.

## CONCLUSION

28.    Notice of this Motion and the hearing thereon has be given via e-mail (if an e-mail address is known) or via overnight delivery (if no e-mail address is known) to: (a) the Office of the United States Trustee; (b) the Debtors' twenty largest unsecured creditors; and (c) all parties requesting notice pursuant to Fed. R. Bankr. P. 2002. In light of the nature of the relief requested, the Debtors submit that such notice is adequate under the circumstances and no other or further notice is required.

29.    No previous request for relief sought herein has been made by the Trustee to this or any other Court.

**WHEREFORE**, the Trustee respectfully requests that the Court approve the relief requested in the Motion, enter the proposed order annexed hereto as Exhibit A, and grant the Trustee such other and further relief as the Court may deem just and proper.

Dated: Jericho, New York
     September 22, 2025

**RIMON P.C.**
Proposed Attorneys for Kenneth P. Silverman, Interim Chapter 7 Trustee

By:     *s/ Brian Powers*
          Brian Powers
          Partner
          100 Jericho Quadrangle, Suite 300
          Jericho, New York 11753
          (516) 479-6300

9