UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re:

NEUEHOUSE INC.,
fdba CULTUREWORKS INC.
fdba FOTOGRAFISKA NEUEHOUSE INC., *et al.,*

                              Debtors.
----------------------------------------------------------------x

Chapter 7
Case No. 25-11937 (MG)
Jointly Administered

**DECLARATION OF KENNETH P. SILVERMAN, ESQ. IN SUPPORT OF CHAPTER
7 TRUSTEE'S APPLICATION (I) SEEKING AUTHORIZATION PURSUANT
TO 11 U.S.C. § 721 TO OPERATE DEBTOR'S BUSINESS ON A LIMITED BASIS
AND (II) AUTHORIZING AND APPROVING THE MANAGEMENT AGREEMENT
WITH CONVENE HOSPITALITY GROUP PURSUANT TO 11 U.S.C. § 363(b)
AND RULE 9006(c) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

I, Kenneth P. Silverman, Esq., declare as follows:

1.     I am the chapter 7 trustee (the "Trustee") of the jointly administered bankruptcy estates (the "Estate") of NeueHouse Inc., fdba Cultureworks Inc., fdba Fotografiska Neuehouse Inc., *et al.* (the "Debtors"), with offices located at 100 Jericho Quadrangle, Suite 300, Jericho, New York 11753. I am duly admitted to practice before this Court and the courts of the State of New York.

2.     I submit this declaration (this "Declaration") in support of the application (the "Application")[1] seeking entry of an order (i) pursuant to Section 721 of Title 11 of the United States Code (the "Bankruptcy Code"), authorizing me to continue the operations of the Debtors' business for the purposes set forth below through and including December 31, 2025 (the "Limited Basis"), subject to further extensions as may be warranted under the circumstances; (ii) pursuant to Section 363(b) of the Bankruptcy Code and Rule 9006(c) of the Federal Rules of Bankruptcy

---

[1] All capitalized terms used but not defined herein shall have the meaning ascribed to them in the Application.

1

Procedure (the "Bankruptcy Rules"), authorizing and approving a management agreement (the "Management Agreement"), substantially in the form annexed thereto as Exhibit B, by and between the Trustee and CHG MSQ Manager, LLC ("CHG"); and (iii) granting such other and different relief as the Court deems just and proper.

3. I have reviewed the Application and relevant documents thereto and certify that its contents are true and correct to the best of my knowledge, and those facts are incorporated herein by reference.

## PRELIMINARY STATEMENT

4. Prior to the Petition Date, the Debtors operated a chain of members only clubs catering to those working in creative industries. The Debtors' spaces were used for various purposes, including weddings and corporate events, and were often licensed to creatives and/or artists as workshops and galleries. The Debtors' locations also have dedicated studios for podcasts and recording studios for use by its members.

5. Despite considerable membership and facilities in desirable locations, the Debtors failed to be profitable and fell considerably behind in rent at three of their four locations. Intermittently over the course of several years, including a process which was ongoing until just before their chapter 7 filings, the Debtors marketed their business for sale. As a result of those marketing efforts, the Debtors received considerable interest from third parties, including some of the largest operators of shared workspaces in the world.

6. Notwithstanding that substantial interest, and a deal appearing to have been close just prior to the Petition Date, the Debtors elected to forego the planned chapter 11 sale process. Instead, the Debtors terminated all of their employees, closed all of their locations, and began filing the chapter 7 cases two days later.

7.   Due to the abrupt nature of the closure of the Debtors' sizeable business and termination of their entire staff, I have faced difficulty in ascertaining certain pertinent financial information relating to the Debtors and their assets. Since my appointment, my professionals and I have expended considerable time and effort in aggregating and reconciling the electronic data, executory and related contracts, and financial information contained in the Debtors' books and records. I also conducted interviews with the Debtors' key management personnel regarding general operations, financial, and administrative issues with the Debtors' business.

8.   While my investigation continues, it has become apparent that I must manage certain assets of the estates to ensure and preserve the value of the Debtors' assets for a potential sale. Permitting the operation of the Debtors' business on the Limited Basis will provide me with the ability to maximize these assets expeditiously and for the benefit of creditors.

9.   Importantly, through the Debtors' pre-filing retained investment banker, I have engaged with numerous parties regarding the potential management and sale of the Debtors' business, including many parties which were interested prior to the Petition Date and others that reached out subsequently. I have also engaged with all of the Debtors' landlords regarding the potential of continuing operations pending a sale, as well as a potential resolution to the various issues concerning the Debtors' locations. Based upon those discussions, it is apparent that the primary value in the Debtors' business is derived from the Debtors' considerable, loyal membership base which pays license fees to the Debtors on a monthly basis to use the facilities. Accordingly, in order to preserve the Debtors' remaining value of the Debtors' assets, it is imperative that I preserve the Debtors' existing membership quickly before those parties find other similar spaces.

10. To assist in managing the Debtors' business at its Madison Square location (and only that location), I have agreed to the terms of the Management Agreement, subject to approval of this Court. CHG, the proposed manager, is part of a global hospitality platform with the infrastructure and expertise to preserve and enhance the Debtors' value for a potential sale of the Debtors' assets. Importantly, CHG has a unique knowledge of the Debtors' business operations because CHG has spent a considerable amount of time performing due diligence on the Debtors as part of a potential purchase pre-petition. In fact, I understand that CHG's affiliate was the leading bidder in the Debtors' prepetition marketing efforts and was close to a deal to move forward with a sale.

11. As manager of the Debtors' operations, CHG will report directly to me and be authorized to, among other things, (a) manage, maintain and operate all services provided by the Debtors, including, but not limited to, meetings, events/event programming, membership services, and related services; and (b) hire and manage all personnel. Perhaps most importantly, CHG has agreed to assume all responsibility operational expenses, including for any shortfalls in operations during the term, ensuring that the Debtors' estates cannot be harmed by any losses from operations. Additionally, an affiliate of CHG and I have agreed to the terms of the sale of the Debtors' assets to CHG's affiliate, to be documented within ten (10) days of the effective date of the Management Agreement and subject to separate approval by this Court on appropriate notice.

12. The Management Agreement also resolves (at least temporarily) any issues with the MSQ Landlord (defined in the Application) by providing for a profit sharing arrangement in lieu of use and occupancy payments for the Madison Square Location (defined in the Application). The MSQ Landlord has consented to the Management Agreement and the structure of payments it would receive as set forth therein.

13. As described below, I determined, in my reasoned business judgment, that the proposed operation of the Debtors' business and the entry into the Management Agreement are the best method for maximizing the value of the Debtors' business as a going concern and preserving value for the benefit of creditors.

**The Bankruptcy Case**

14. On September 5, 2025 (the "Petition Date"), September 7, 2025, September 8, 2025, September 9, 2025 and September 10, 2025, each of the various Debtors each filed a voluntary petition for relief in accordance with chapter 7 of the Bankruptcy Code in this Court.

15. By Notice of Appointment, I was appointed the interim chapter 7 trustee (the "Trustee") of the Debtors' estates.

16. The initial section 341 First Meeting of Creditors is scheduled to be held on October 7, 2025.

**The Eviction Action**

17. On March 17, 2025, 25 Park LLC (the "MSQ Landlord"), the Debtors' landlord at the Madison Square location at 110 East 25th Street, New York, New York (the "Madison Square Location"), declared the Debtors' lease for the Madison Square Location terminated for non-payment. On that same date, the MSQ Landlord commenced an eviction action in New York State Supreme Court (the "State Court") against NeueHouse, Inc. ("NeueHouse"), which was pending as of the Petition Date.

**The Debtors' Business and Assets**

18. As discussed above, the Debtors operated a chain of members (collectively, the "Members") only clubs catering to those working in creative industries. Upon information and belief, as of the Filing Date, the Debtors had approximately 3,000 Members, each permitted to use

the leased spaces as workshops, studios, and galleries. The Debtor also used their leased spaces for various purposes, including weddings and corporate events.

19. Prior to the filing of these chapter 7 cases, the Debtors were engaged in negotiations with an affiliate of CHG, as well as numerous other parties, regarding the sale of the Debtors' business.

20. Importantly, the Debtors terminated all of their employees shortly before the Petition Date, and I do not possess the necessary expertise to run the Debtors' business on a day-to-day basis. To preserve the value of the Debtors' business for a potential sale to CHG's affiliate (or any another purchaser if the Court declines to approve such a sale), the Debtors must be operating and maintaining its membership base. In order to effectively accomplish that goal, the retention of CHG is necessary.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Jericho, New York on September 22, 2025.

*s/ Kenneth P. Silverman*
Kenneth P. Silverman, Esq.
