**Objection Deadline: April 23, 2026 at 4:00 p.m. (ET)**

Gregory M. Juell
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501
Email: gregory.juell@us.dlapiper.com

Aaron S. Applebaum (*pro hac vice* admission pending)
**DLA PIPER LLP (US)**
1201 North Market Street, Suite 2100
Wilmington, Delaware 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Email: aaron.applebaum@us.dlapiper.com

*Counsel to Stripe, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>NEUEHOUSE INC.,<br>fdba CULTUREWORKS INC.<br>fdba FOTOGRAFISKA NEUEHOUSE INC., *et al.*,<br><br>Debtors.[1] | Chapter 7<br><br>Case No. 25-11937 (MG)<br><br>(Jointly Administered) |

**MOTION OF STRIPE, LLC FOR**
**ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM**

Stripe, LLC, f/k/a/ Stripe, Inc. ("Stripe"), by and through its undersigned counsel, files this motion for entry of an order under section 503 of title 11 of the United States Code (the "Bankruptcy Code") allowing and directing prompt payment to Stripe of an administrative expense claim in the amount of $813,085.00 (the "Administrative Claim") for postpetition services provided for the benefit of the above-captioned debtors' (the "Debtors") estates. In support, Stripe respectfully states as follows:

---

[1]    The Debtors in these jointly administered cases are: 63 Market Lessee LLC, Case No. 25-11940; Bradbury Lessee LLC, Case No. 25-11941; Neuehouse New York HQ LLC, Case No. 25-11942; Neuehouse Optimization Inc., Case No. 25-11943; NH F&B Inc., Case No. 25-11944; 73 Market Lessee LLC, Case No. 25-11946; Neuehouse Management, LLC, Case No. 25-11947; Neuehouse Hollywood LLC, Case No. 25-11948; NH Holdings Trust, Case No. 25-11953; Neuehouse Madison Square LLC, Case No. 25-11970.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334 and

the *Amended Standing Order of Reference from the United States District Court for the Southern

District of New York*, dated January 31, 2012.  This matter is a core proceeding under 28 U.S.C. §

157(b)(2).

2.      Venue of this motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested in this motion are sections 503(b)(1)(A)

and 507(a)(2) of the Bankruptcy Code.

## PRELIMINARY STATEMENT

4.      The Trustee (defined below) determined early in this case that the Debtors'

bankruptcy estates would benefit from his postpetition operation of certain parts of the Debtors'

business.  The Trustee and his third-party manager operated the Debtors' business using Stripe's

credit card processing services.  Stripe has incurred substantial postpetition losses by way of credit

card chargebacks from the Debtors' customers, the honoring of which enabled the Trustee to

maintain customer goodwill and otherwise continue to operate the business.  Despite the clear

benefit provided, the Trustee and his manager have failed to honor their obligations to reimburse

Stripe for its losses.

5.      Stripe provided essential postpetition services that benefited these estates by

enabling the Trustee's operation of the business to maximize value for stakeholders.  Stripe's

postpetition services included absorbing the ongoing risk and cost of chargebacks that arose in the

ordinary course when customers disputed their credit card charges.  Specifically, upon a successful

customer dispute, Stripe remitted funds back to the card-issuing bank from Stripe's own funds, as

the original payment had already been transferred to the Debtors' estates, thereby creating an

obligation for the estates to reimburse Stripe for such chargebacks. Stripe continued to process payments and, critically, to honor and fund chargebacks during the Trustee's postpetition business operations, despite not having been reimbursed anything for such postpetition losses. Permitting the Trustee to have operated the Debtors' business without honoring ordinary course obligations like chargebacks, which would be granted administrative expense status in a typical chapter 11 case, creates an inequitable loophole.

6. Stripe stood ready and willing to continue providing the critical services necessary to preserve and maximize the value of the estates; however, Stripe should not be compelled to subsidize the estates' operation at its own expense. Without Stripe's continued support, the business would not have been able to operate and would have lost its inherent value overnight. If Stripe had discontinued its services, the Trustee would have been unable to process transactions and would be left to manage all chargebacks, incurring significant administrative costs and burdens, which would have severely strained customer relationships and operational stability. Accordingly, the motion should be granted.

## BACKGROUND

### A. General Background

7. The Debtors operated a chain of members-only clubs catering to those working in creative industries. The Debtors' spaces were used for various purposes, including weddings and corporate events, and were often licensed for use as workshops and galleries.

8. On September 10, 2025 (the "Petition Date"), Neuehouse Madison Square LLC (Case No. 25-11970 (MG)) (the "Madison Debtor") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.

3

9.      By the *Notice of Chapter 7 Bankruptcy Case* [D.I. 8], Kenneth P. Silverman, Esq. (the "Trustee") was appointed the interim chapter 7 trustee of each of the Debtors' estates and subsequently became the permanent chapter 7 trustee.

**B.      The Debtors' Services Contract with Stripe**

10.      Prepetition, the Madison Debtor and Stripe entered into a contract, known as the *Stripe Services Agreement* (the "Services Contract"), for two separate accounts.   Under the Services Contract, Stripe provided certain credit card and related processing services to the Debtors in exchange for transactional charges. As part of this process, Stripe addressed and honored chargebacks initiated by customers who disputed certain transactions. In such instances, Stripe advanced the disputed transaction amount to the card-issuing bank on a provisional basis. Because Stripe had already transferred the proceeds from the original customer charges to the Debtors, Stripe funded these disputed amounts from its own accounts, creating an obligation for the Debtors' estates to repay Stripe.   Stripe did not enter into any new or additional postpetition agreements with the Debtors or the Trustee. However, following the Petition Date, various charges were processed for the Debtors' business through a separate account held by CHG (defined below).

11.      On September 22, 2025, the Trustee filed an application for authority to operate the Debtors' business on a limited basis [D.I. 18] (the "Application to Operate"). On information and belief, the Trustee entered into a management agreement with CHG MSQ Manager, LLC ("CHG") to facilitate the Trustee's postpetition operation of the business. The Court entered an order granting the Application to Operate [D.I. 21] on September 26, 2025.

12.      Under the *Interim Management Agreement* (the "Management Agreement"), annexed as Exhibit B to the Application to Operate, CHG was responsible for the day-to-day operation of the Debtors' co-working space, the "Madison Square Business," which included

4

member services, sales and marketing, staffing, maintenance, purchasing, and necessary accounting services.

13.    On March 27, 2026, Stripe sent the Trustee a letter requesting payment of the Administrative Claim by no later than April 3, 2026.  Stripe received no response or payment.  A copy of the letter is attached as **Exhibit A** to this motion.

14.    Since the Petition Date, Stripe honored chargebacks for the Debtors' customers, totaling $813,085.00 (the "Postpetition Chargebacks").  A list of the Postpetition Chargebacks is attached to this motion as **Exhibit B**.  Stripe has not been reimbursed for any of the Postpetition Chargebacks.

## RELIEF REQUESTED

15.    By this motion, Stripe respectfully requests that the Court enter an order, substantially in the form attached as **Exhibit C**, allowing Stripe's Administrative Claim in full and directing the Trustee to promptly pay such claim.

### A.    The Postpetition Chargebacks Qualify for Administrative Expense Priority under Section 503(b)(1)(A) of the Bankruptcy Code.

16.    The Bankruptcy Code provides administrative expense status for "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A).  Administrative priority can be accorded to "costs ordinarily incident to operation of a business."  *In re Old Carco LLC,* 424 B.R. 633, 643 (Bankr. S.D.N.Y. 2010) (citing *Reading Co. v. Brown*, 391 U.S. 471, 483, 88 S. Ct. 1759, 20 L. Ed. 2d 751 (1968)).

17.    An expense will be accorded administrative expense priority "(1) if it arises out of a transaction between the creditor and the bankrupt's trustee or debtor-in-possession; and (2) only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business." *Amalgamated Ins.*

5

*Fund. v. McFarlin's Inc.,* 789 F.2d 98, 101 (2d Cir. 1986) (citing *Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.),* 536 F.2d 950, 954 (1st Cir. 1976)).  The principal purpose of section 503 of the Bankruptcy Code is to induce entities to do business with a debtor after bankruptcy by ensuring that those entities receive payment for services rendered.  *In re Old Carco LLC*, 424 B.R. at 641.  Section 503(b) provides protection for third parties that provide actual and necessary services to the estate, who may otherwise be reluctant to transact business with the debtor.  *In re Globe Metallurgical, Inc.*, 312 B.R. 34, 39–40 (Bankr. S.D.N.Y. 2004).

18.     The claimants' services must have been "induced" by the trustee, *i.e.*, after commencement of the bankruptcy.  *In re Old Carco LLC*, 424 B.R. at 642 (citing *In re Jartran*, 732 F.2d 584, 587 (7th Cir. 1984)).  Where a trustee "elects to continue to receive benefits from the other party to an executory contract pending a decision to assume or reject the contract, the [trustee] is obligated to pay for the reasonable value of those services."  *In re Patient Educ. Media*, 221 B.R. 97, 101 (Bankr. S.D.N.Y. 1998) (citing *NLRB v. Bildisco & Bildisco*, 465 U.S. at 531).  Creditors who are induced to supply goods or services to a trustee "pursuant to a contract that has not been rejected are afforded administrative priority to the extent that the consideration supporting the claim was supplied during the reorganization." *In re Old Carco LLC*, 424 B.R. at 642.

19.     Stripe's losses and the Trustee's obligation to reimburse the Postpetition Chargebacks satisfy the first prong of the administrative expense test because they are "costs ordinarily incident to operation" of the business. The Trustee's postpetition operation of the Debtors' business depended on Stripe's ongoing provision of essential payment processing services, including the remittance of funds to address chargebacks initiated by Debtors' customers. Given that the Debtors operated a members-only club with spaces routinely used for weddings, corporate events, workshops, and gallery exhibitions, seamless payment processing and honoring

chargebacks were integral—not merely ancillary—to the day-to-day operation of the business. The Debtors' business model relied on frequent, high-value transactions and ongoing customer engagement, making the ability to process payments and resolve disputes through chargebacks an ordinary and indispensable cost of doing business. Moreover, the Trustee induced Stripe's services postpetition by not rejecting the Services Contract, and the Management Agreement expressly contemplated the processing of credit card fees and chargebacks.

20.     The second prong of the administrative expense test, showing a benefit to the estate, is also satisfied because these estates have benefited from Stripe's services. As explained above, the provision of payment processing and related chargeback services were essential to the business's survival, enabling the Debtors' estates to manage customer disputes, maintain critical revenue streams, and preserve customer goodwill. Had Stripe not honored the chargebacks, the Trustee would have faced significant reputational harm from dissatisfied club members, which would have diminished the value of the Madison Square Business the Trustee was attempting to operate and sell. *Solow v. Am. Airlines (In re Midway Airlines)*, 221 B.R. 411, 452-53 (Bankr. N.D. Ill. 1998) (holding that the chargeback component of a creditor's claim was entitled to administrative priority since it benefited the debtors' estates).

**A.      The Routine Approval of Reimbursements for Chargebacks in Cash Management Orders Supports Administrative Claim Status.**

21.     Courts consistently recognize that the ability to process credit card chargebacks is integral to the maintenance of effective cash management systems in bankruptcy cases. In chapter 11 cases, cash management orders commonly authorize banks to process chargebacks in the ordinary course of business as part of first-day relief, often without the need for notice. *See, e.g., In re Benitago Inc., et al.*, Case No. 23-11394 (SHL) (Bankr. S.D.N.Y. Jan. 19, 2024) [D.I. 374] (authorizing the debtors' bank to debit the debtors' accounts in the ordinary course of business for

fees, chargebacks, and "all undisputed prepetition amounts owed . . . for the maintenance of the"

cash management system); *In re Voyager Digital Holdings, Inc., et al.*, Case No. 22-10943 (MEW)

(Bankr. S.D.N.Y. Feb. 8, 2023) [D.I. 983] (authorizing banks to "continue" to honor and process

chargebacks in the ordinary course of business without further order from the Court); *In re Celsius*

*Network LLC, et al.*, Case No. 22-10964 (MG) (Bankr. S.D.N.Y. Oct. 21, 2022) (same). The

routine approval of such relief underscores the judiciary's recognition that chargeback processing

is essential to the uninterrupted operation of a debtor's business and the integrity of its cash

management system. It would be inequitable to permit a trustee to circumvent the routine and

essential nature of chargebacks processed and paid in the ordinary course of business simply while

operating the business.

22.     The Postpetition Chargebacks are postpetition transactions that provided a direct

and substantial benefit to the estates. Accordingly, Stripe's claim for repayment of the Postpetition

Chargebacks should be allowed as an administrative expense under section 503(b)(1)(A).

**C.      The Court Should Compel Prompt Payment of Stripe's Administrative Expense Claim.**

23.     "The timing of distributions for administrative expense payments, other than at the

close of the case, is within the discretion of the Court." *In re Shihai,* 392 B.R. 62, 68 (Bankr.

S.D.N.Y. 2008). The court's discretion in determining the time of payment should be used "to

ensure the 'orderly and equal distribution among creditors and the need to prevent a race to a

debtor's assets,' especially if there is a doubt as to the administrative solvency of the debtor

overall." *Id.* (citing *In re Chi-Chi's, Inc.*, 305 B.R. 396, 401 (Bankr. D. Del. 2004)).

24.     Stripe provided essential payment processing services to the estates, which directly

benefited the estates by enabling continued business operations and facilitating customer

transactions. Stripe received no payments or response to its attempt to resolve this matter directly

8

with the Trustee, which necessitated filing this motion.  Delaying payment for postpetition services undermines the administrative priority scheme established by the Bankruptcy Code, and accordingly, prompt payment of Stripe's administrative expense claim is warranted.

**RESERVATION OF RIGHTS**

25.     Stripe reserves all rights with respect to its Administrative Claim including, but not limited to, the right to amend, update or supplement this motion at any time and to assert additional claims.  Stripe does not waive any claims against the estates or the Trustee that may arise after the date of this motion.  To the extent applicable, Stripe reserves all rights of setoff and recoupment.

[*Remainder of page intentionally left blank*]

**WHEREFORE**, for the reasons stated above, Stripe respectfully requests that the Court enter an order, substantially in the form attached as **Exhibit C**: (i) allowing the Administrative Claim in full; (ii) ordering the Trustee to promptly pay the Administrative Claim; and (iii) granting such other and further relief as the Court may deem just and proper.

Dated: April 9, 2026          Respectfully submitted,
      New York, New York

**DLA PIPER LLP (US)**

 /s/  Gregory M. Juell
Gregory M. Juell
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501
Email: gregory.juell@us.dlapiper.com

- and -

Aaron S. Applebaum (*pro hac vice* admission pending)
1201 North Market Street, Suite 2100
Wilmington, Delaware 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Email: aaron.applebaum@us.dlapiper.com

*Counsel for Stripe, LLC*